**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bernard J. DION, Defendant–Appellant.**

No. 93–3574.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1994.

Decided Aug. 15, 1994.

Larry Wszalek (argued), Office of U.S. Atty., Madison, WI, for plaintiff-appellee.

Joseph P. Ennenbach (argued), Beloit, WI, for defendant-appellant.

Before BAUER, WOOD, Jr., and CUDAHY, Circuit Judges.

BAUER, Circuit Judge.

Bernard Dion pled guilty to one count of misapplication of bank funds by a bank employee in violation of 18 U.S.C. § 656. The district court sentenced Dion to ten months in the penitentiary. Dion appeals two aspects of the district court's determination of his sentence, and we affirm.

## I. Background

From October 1987 through November 1991, Dion served as an installment loan officer for the First National Bank and Trust of Beloit, Wisconsin, where he had the authority to write and approve any loan requests for less than $15,000, subject to periodic review by his superiors. From January 1991 to November 1991, Dion wrote six fraudulent loans in the names of one fictitious person and two men who were not customers of the bank. The amount of the loans totalled $38,632.47, which Dion used to pay personal obligations.

Bank officials first became suspicious of Dion because of a loan he had written on November 8, 1991. Feeling the heat, Dion repaid $16,180.63 on the loans over the ensuing four days. His efforts to conceal his crime were wasted, and the bank officials realized what Dion had done. Later that

month, bank officials confronted Dion with the fruits of their investigation, and he confessed.

A grand jury indicted Dion on six counts of misapplication of bank funds, and the government accepted Dion's offer to plead guilty to one count. Of course, Dion's sentence was a matter for the district court. The district court calculated the loss amount to be $27,240.65 pursuant to United States Sentencing Commission, *Guidelines Manual,* § 2B1.1. It excluded from this calculation the amount of one loan because it determined that it was technically a "loan renewal." In addition, the district court refused to subtract from the loss amount money Dion had repaid on the loans. Further, the district court enhanced Dion's offense level for abusing a position of trust pursuant to U.S.S.G. § 3B1.3. Finally, the district court calculated Dion's imprisonment range to be from ten to sixteen months and sentenced him to ten months in the penitentiary. Dion appeals the district court's application of § 2B1.1 and its determination that § 3B1.3 applies to his crime.

## II. Analysis

■ Dion does not argue that the district court calculated the amount of loss improperly pursuant to § 2B1.1, but that the district court applied the wrong section of the sentencing guidelines in the first place. He claims that § 2F1.1 is the section most appropriate under which to calculate the amount of the bank's loss because that section's focus is on bank loans.[1] We are not persuaded.

■ A district court's selection of the applicable guideline section is a question of law, which we review *de novo. United States v. Rubin,* 999 F.2d 194, 196 (7th Cir.1993). In sentencing the defendant, a district court must "[d]etermine the offense guideline section ... most applicable to the offense of conviction (*i.e.* the offense conduct charged in the count of the indictment or information of

---

1. Loss calculations under this section permit subtraction of monies recovered by the bank (or, in this case, repaid by Dion) at the time the crime is discovered. U.S.S.G. § 2F1.1, comment. (n. 7). Depending on how Dion's repay-

ment would be viewed (on which we express no opinion), his sentence might have been lightened under this section. This explains Dion's attraction to this argument.

which the defendant was convicted)." U.S.S.G. § 1B1.2(a). In this case, § 2B1.1 is most applicable to Dion's crime of misapplication of bank funds.

Section 2B1.1 addresses "Larceny, Embezzlement, and Other Forms of Theft." Neither the text of the section nor its accompanying commentary offers further information as to the types of conduct covered by the section, but we can presume that our common understanding of these crimes applies. The commentary to this section, however, specifically lists as an applicable statutory provision 18 U.S.C. § 656.

With respect to his conduct, Dion pled guilty to the misapplication of bank funds. As we have already recounted, Dion was able to divert funds for his own personal use and created a phony paper trail of loan applications to non-customers to conceal his crime. From any angle, Dion's conduct fits a common definition of embezzlement: "The fraudulent appropriation of property by one lawfully entrusted with its possession." Black's Law Dictionary 522 (6th ed. 1990).

Dion does not contest the broad application of § 2B1.1 to crimes such as his, but argues that his is the rare situation in which § 2F1.1 applies to conduct proscribed by 18 U.S.C. § 656. His argument is that § 2F1.1 concerns fraudulent loans and that fraudulent loans enabled Dion to obtain the money and conceal wrongdoing. While this argument has superficial appeal, a close read of § 2F1.1 reveals Dion's misunderstanding of the section.

Section 2F1.1 addresses "Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States." The text of this section does not articulate the types of conduct to which it is addressed, but the commentary to § 2F1.1 states that the section addresses fraudulent conduct with respect to obtaining a loan. The commentary includes illustrations, however, that feature a bank's customer providing false information on an application for a loan; these illustrations focus on information necessary to induce the bank to make the loan.

These illustrations are distinguishable from Dion's conduct in this case. The critical aspect of the illustrations offered by § 2F1.1 is the quality of the fraudulent information contained in the bank's customers' loan applications—that certain items of information must be falsified to obtain the loan. On the other hand, the substance of Dion's crime is that he converted bank funds for his own use. Dion prepared the loan documentation simply to prevent his superiors from discovering his crime in the course of their periodic review of his loans. The quality of the information in Dion's documentation was immaterial; he needed no approval from anyone to obtain the funds. The bank did not loan Dion this money, he stole it. And he was able to make the transfer of funds look like a loan instead of a theft (albeit with a built-in repayment plan) solely because of his position with the bank. Bolstering the position that § 2F1.1 does not apply to this situation is the absence of 18 U.S.C. § 656 from that section's list of relevant statutory provisions. From all of this, it is clear that the district court properly selected § 2B1.1 as the guideline section most applicable to Dion's crime.

■ Dion next argues that the district court erred by enhancing his sentence for an abuse of trust pursuant to U.S.S.G. § 3B1.3. That section states:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by two levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.

Dion argues that an abuse of trust is a specific offense characteristic of his crime because 18 U.S.C. § 656 applies only to bank employees; he claims that a district court cannot apply this section to any bank employee, from the bank's CEO to its janitor. It is an interesting position, but one that we reject categorically.

While this court has not been presented with this issue before, we agree with the Second, Third, Fifth and Ninth Circuits that an abuse of a position of trust is not an element of an embezzlement or misapplica-

tion of bank funds under 18 U.S.C. § 656. *See United States v. McElroy,* 910 F.2d 1016, 1027 (2d Cir.1990); *United States v. Georgiadis,* 933 F.2d 1219, 1225 (3d Cir.1991); *United States v. Fisher,* 7 F.3d 69, 70 (5th Cir.1993) (per curiam); *United States v. Christiansen,* 958 F.2d 285, 287 (9th Cir. 1992). There is a difference between a breach of a bank employee's duty of trust and the employee's abuse of that trust. Those, like Dion, who embezzle or misapply bank funds necessarily breach their duty of trust to their employer. This breach of trust is all that is required to constitute a violation of 18 U.S.C. § 656.

 Abuse of a position of trust under the guidelines, however, is more than a simple breach of trust. To constitute an abuse of trust, "[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded other persons." U.S.S.G. § 3B1.3, comment. (n. 1) In this case, to justify Dion's sentence enhancement under this section, more had to be shown than that Dion wrongfully converted bank funds for his own use, and it was.

Dion's position enabled him to misapply funds and conceal it by calling the transfers loans, and he was able to do all of this without approval from anyone. Clearly, this was not an opportunity easily afforded other persons. Dion maintained a high position at the bank, carried a concomitant duty of trust there, and, by misapplying bank funds, Dion obviously abused that trust. This case demonstrates that determining whether Dion abused a position of trust for purposes of upward adjustment under § 3B1.3 requires consideration of matters above and beyond the elements of 18 U.S.C. § 656.

### III. Conclusion

In determining Dion's sentence, the district court selected the appropriate sections of the sentencing guidelines and applied them properly. Dion's sentence is therefore

AFFIRMED.

CUDAHY, Circuit Judge, concurring in part and dissenting in part.

The essential difference between a fraudulent loan and theft or embezzlement seems to me to be whether there was throughout an intent to re-pay the money or, on the contrary, an intent to permanently misappropriate it. Here Dion was regularly making payments on the loans he had illegally arranged; he intended to repay them and under Guideline § 2F1.1 would receive credit for the amount repaid.

The majority, on the other hand, seems to think that the difference between §§ 2B1.1 and 2F1.1 is whether the misapplication of funds was an inside or an outside job. If a customer lied in order to obtain funds he intended to repay the matter falls under § 2F1.1; if a loan officer makes similar arrangements on his own behalf, § 2B1.1 applies. I think this is incorrect.

The increased culpability of the loan officer in comparison with, for example, a customer is covered by the enhancement for abuse of a position of trust. *See United States v. Hathcoat,* 30 F.3d 913, 915–19 (7th Cir.1994), which draws a significant distinction between mere *breach* of trust which may be inherent in the charged offense and *abuse* of trust which requires something more.

In summary, I would follow the fraudulent loan guideline (§ 2F1.1) in calculating Dion's offense level but would subject him to an enhancement for abuse of trust. Therefore, to the extent indicated I respectfully dissent.