**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Stephanie Y. BOATNER, Defendant–
Appellant.**

No. 95–3663.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1996.

Decided Oct. 30, 1996.

Jon E. DeGuilio, Andrew Baker, argued, Office of the United States Attorney, Dyer, IN, Philip P. Simon, Office of the United States Attorney, Hammond, IN, for Plaintiff–Appellee.

Frank R. Martinez, III, argued, Highland, IN, for Defendant–Appellant.

Before COFFEY, RIPPLE and DIANE P. WOOD, Circuit Judges.

COFFEY, Circuit Judge.

In a scheme to defraud the Travelers Insurance Company, defendant Stephanie Boatner and three others took part in a staged automobile accident and entered the previously damaged vehicle while pretending to have been victims of a hit-and-run accident. Boatner and her co-conspirators each gave the same fictitious account of an alleged accident to the police and as well to the medical personnel at the hospital. Each of the participants in the fraudulent scheme made multiple, follow-up visits to various doctors for unnecessary medical care, hired the same attorney, and carried out the fraud with the filing of false accident and injury claims against Travelers Insurance Company. Boatner, claiming she had sustained neck and back injuries, received a settlement from Travelers in the amount of $4600. She and her coconspirators ultimately bilked Travelers out of over $20,000. Boatner pled guilty to mail fraud, in violation of 18 U.S.C. § 1341, for her participation in the fraudulent scheme. The district judge found Boatner guilty on her plea and sentenced her to ten months' imprisonment. Boatner appeals her sentence on various grounds. We affirm.

## I. BACKGROUND

On July 30, 1992, Everett Warren staged a pre-arranged automobile accident involving a Ford Taurus, insured by the Travelers Insurance Company ("Travelers"). Damage was inflicted on the Ford Taurus when John Farkas slammed his pickup truck into the Taurus while it was empty, thus causing substantial damage to the Ford Taurus.

The damaged vehicle was then brought [1] to White Oak Street near the intersection of 145th Street in East Chicago, Indiana. There, defendant Boatner, Rochelle Lynch, Alethia Gill, and Joy Watson entered the Taurus and faked injuries as if they had been passengers in the vehicle when it was struck by a hit-and-run driver.

The police were called to the scene of the alleged accident and were told as a part of the fraudulent scheme that the Taurus had

---

1. The parties agree that the Taurus was brought to the scene of the staged accident, but the rec-ord fails to disclose how the vehicle was transported to that location.

been struck by a hit-and-run driver. Shortly thereafter, the four "passengers" from the Taurus were conveyed to Methodist Hospital for the purpose of receiving emergency medical treatment, even though such treatment was unnecessary as they had incurred no injuries. At the hospital, Boatner claimed to have neck and back pain. All of the "passengers" in the Taurus later retained Attorney Richard Levinson for the purpose of pursuing an uninsured motorist claim against Travelers.

After receiving the unnecessary emergency medical care at Methodist Hospital, Boatner continued to carry out the fraudulent accident scheme by making repeated visits to another doctor in order to receive further unnecessary medical treatment. The other three alleged passengers in the staged accident likewise continued to receive unnecessary medical treatment from various health care providers. The purpose of continuing to receive the unnecessary care was obviously to increase their respective personal injury claims and thus ultimately the potential settlement figure.

After the accident, Attorney Levinson, on behalf of Boatner and the other participants, filed a claim with Travelers falsely alleging injuries. As a result of the fraudulent claim, Boatner received a settlement of $4600.00. In all, Travelers paid out a total of $21,906.18 on the claim relating to the July 30, 1992 staged accident.

On October 20, 1994, a federal grand jury returned a 32–count indictment against Boatner and twenty-seven other individuals in connection with numerous other fraudulently staged accidents, including the July 30, 1992 accident, which is the subject herein. According to the indictment, the July 30, 1992 accident was but a part of the larger fraudulent scheme. The indictment alleged that the defendants conspired to defraud various insurance companies by staging numerous automobile accidents and fraudulently generating medical bills in order to collect settlements. The indictment further alleged that Boatner and others made use of the United States mails in their execution of the scheme to defraud. In particular, Counts 18 and 19

charged Boatner and others with committing mail fraud, in violation of 18 U.S.C. § 1341. On November 8, 1994, Boatner made her initial appearance and was released on bond. At the arraignment on November 17, 1994, Boatner pled not guilty to the indictment.

As part of her pretrial release, Boatner was ordered to undergo drug counseling and random drug testing under the direction of her pretrial services officer, Carl Kilburg. Shortly after she was released on bond, she tested positive for cocaine and was referred to the Gary Community Mental Health program for outpatient drug treatment. However, she refused to cooperate with the treatment program and failed to appear for drug testing and counseling on ten separate occasions from December 1994 through March 1995. On the two occasions that she did appear for testing in March 1995, she tested cocaine positive. Boatner also failed to appear for drug testing and counseling on May 25, 1995, and refused to undergo drug testing on June 2, 1995.

Thereafter, Officer Kilburg filed a petition to revoke Boatner's bond, and at this time Boatner agreed to enter an inpatient treatment program and the petition was withdrawn. After she completed the inpatient treatment therapy, she was referred to Tri–City Mental Health, an intensive outpatient drug program. The program involves intensive group counseling for three hours a day for four days a week. Boatner reported to the facility for treatment on only two occasions. Essentially, through August and September 1995, Boatner failed to participate in the outpatient treatment program. Boatner told Kilburg that she was unable to attend the outpatient program due to medical problems, and failed to comply with a request to produce a doctor's note to document her excuse.

Boatner, her pretrial release officer, and the government submitted a proposed plea agreement to the district court. Under the terms of the agreement, submitted on May 3, 1995, Boatner agreed to plead guilty to Counts 18 and 19, with the remaining counts to be dismissed at the time of sentencing.[2]

**2.** It is not clear from the record whether the

remaining counts against Boatner—Counts 1, 20,

At the initial sentencing hearing on October 6, 1995, the district court accepted the plea agreement.

During the October 6 hearing, the court entertained argument from counsel on Boatner's objections to the sentencing recommendations in the Presentence Investigation Report ("PSR"). On the issues of (1) whether Boatner should be held accountable for the entire $21,908.18 loss suffered by Travelers, (2) whether she was a "minor participant" in the fraud, and (3) whether she engaged in "more than minimal planning," the judge rejected Boatner's objections to the PSR's recommendations. On the issue of acceptance of responsibility, the PSR recommended that the court deny Boatner a reduction on that basis due to her continued drug use. At the hearing, Boatner testified that she was then drug free and that, if she were to undergo drug testing at that time, the result would be negative. Based on that testimony and representations by the attorneys, a question arose as to whether Boatner's drug use was limited to the period before her guilty plea. The court continued the hearing so that counsel could address the issue of whether the timing of Boatner's cocaine use would affect whether she deserved an adjustment for acceptance of responsibility.

Immediately following the hearing, Kilburg had Boatner submit to a drug test. Contrary to Boatner's prediction, she tested positive for cocaine. Boatner reentered the TriCity outpatient treatment program on October 16, 1995, and once again she continued her pattern of failing to cooperate and appear for drug testing and drug counseling.

When the sentencing hearing resumed on November 2, 1995, Boatner attempted to explain why she tested positive for cocaine on October 6. She came up with another excuse. This time she stated that, not long before the test, she had smoked a marijuana cigarette and that it must have been laced with cocaine. She also offered a number of other excuses for her most recent absences from the Tri–City treatment program. Find-

ing that Boatner was not credible, the judge rejected Boatner's request for an acceptance of responsibility reduction. The court adjudged Boatner guilty of Counts 18 and 19 and dismissed Counts 1, 20, and 21. The trial judge sentenced her to ten months' imprisonment on each count, to be served concurrently, and three years of supervised release. The judge also ordered Boatner to pay restitution in the amount of $4600, as well as a special assessment of $100.00.

## II. ISSUES

Boatner raises four issues dealing with her sentencing. First, Boatner claims that the district judge erred in finding that she was responsible for the total loss involved in the scheme rather than just the portion of the loss that Travelers paid to her. This finding resulted in a four-point increase in her offense level under U.S.S.G. § 2F1.1(b)(1). Second, Boatner argues that the trial judge erred in finding that her conduct warranted a two-point increase for "more than minimal planning" under U.S.S.G. § 2F1.1(b)(2). Third, Boatner contends that the district court erred in failing to allow a two-point decrease for her being a "minor participant" pursuant to U.S.S.G. § 3B1.2(b). Finally, Boatner also maintains that the judge erred in refusing to give her a two-point reduction for "acceptance of responsibility" under U.S.S.G. § 3E1.1(a).

## III. DISCUSSION

### A. Amount of Loss

Boatner claims that the district court erred in finding that she was responsible for the total amount of the loss suffered by Travelers. At Boatner's sentencing hearing, the district court found that "the actions of the defendant and the other parties in this accident were jointly undertaken; and ... the amount of loss has exceeded $20,000; and was reasonably foreseeable." Accordingly, the court increased Boatner's offense level by four levels under U.S.S.G. § 2F1.1(b). If, as

and 21—were ever read into the record and considered by the court at the time of sentencing. However, at her change of plea hearing, Boatner did expressly acknowledge that, in sentencing

her, the judge would consider the total amount of the fraud perpetuated on Travelers Insurance Company.

Boatner had urged, the judge had found Boatner responsible for only that portion of the loss that Travelers paid to Boatner, which was $4600, then Boatner would have been eligible for only a one-point increase. On appeal, "[w]e will uphold a Guidelines sentence 'so long as the district court correctly applied the Guidelines to findings of fact that were not clearly erroneous.'" *United States v. Sykes,* 7 F.3d 1331, 1335 (7th Cir.1993) (quoting *United States v. Duarte,* 950 F.2d 1255, 1262 (7th Cir.1991), *cert. denied,* 506 U.S. 859, 113 S.Ct. 174, 121 L.Ed.2d 120 (1992)).

Under U.S.S.G. § 2F1.1(b), the base offense level for a crime of fraud is calculated based on the dollar amount of the loss caused by the fraud.[3] In addition, the Sentencing Guidelines specify that the defendant's base offense level shall be calculated on the basis of both the defendant's own wrongful acts and omissions and in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

> U.S.S.G. § 1B1.3(a)(1)(B). Thus, criminal activity is "jointly undertaken" when it involves "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy."

U.S.S.G. § 1B1.3, comment. (n. 2). In such a case, a defendant is accountable for the conduct of others if the conduct was both: (1) in furtherance of the jointly undertaken criminal activity, and (2) reasonably foreseeable in connection with that criminal activity. *Id.*

In the present case, Boatner claims that the trial judge erred in finding that the portion of the loss in excess of $4600 was "jointly undertaken." Boatner maintains that in order to hold a defendant liable for the acts of others, the trial judge must initially find that those acts were within the scope of the defendant's agreement. (Appellant's Br. 8, citing § 1B1.1, comment. (n.2)). Boatner argues that there was insufficient evidence in the record for the court to find that she agreed to the other passengers' fraudulent claims that formed the balance of the loss to Travelers in excess of $4600. (Appellant's Br. at 17). Accordingly, she maintains that the other passengers' claims were outside the scope of her agreement and hence the loss attributable to those claims cannot properly be imputed to her.

At the outset, we note that Boatner and her attorney's argument is based more on wishful thinking than on reality. It is implausible to suggest that Boatner agreed to a scheme according to which, although she was one of four passengers feigning injuries, she and she alone would make a fraudulent claim against the insurance company. Nevertheless, Boatner argues that several factors suggest that she did not agree to any fraudulent claims other than her own. Citing *United States v. Studley,* 47 F.3d 569, 575 (2d Cir. 1995), Boatner contends that the district judge did not adequately consider (1) whether the participants pooled their profits and resources, or whether they worked independently, and (2) whether the defendant assisted in designing and executing the illegal scheme. If the district court had considered these factors, Boatner claims, the court would have found that she was not responsible for any of the loss in excess of $4600. Initially, Boatner argues that she did not pool her profits with anyone. She further claims that the only common resource was the Ford Taurus in which the accident was staged. Next, focusing on her dealings with

---

**3.** Section 2F1.1(a) provides for a base offense level of 6, to be modified according to the following table in subsection (b):

> (1) If the loss exceeded $2,000, increase the offense level as follows:

| *Loss* (Apply the Greatest) | *Increase in Level* |
|---|---|
| (A) $2,000 or less | no increase |
| (B) More than $2,000 | add **1** |
| (C) More than $5,000 | add **2** |
| (D) More than $10,000 | add **3** |
| (E) More than $20,000 | add **4** |
| (F) More than $40,000 | add **5** |

. . . .

the insurance company, she contends that she and the other "injured passengers" pursued their fraudulent claims independently; that is, neither she nor any of the other passengers had any influence or control over what the others did in furtherance of their efforts to defraud Travelers. Finally, Boatner maintains that she did not participate in the planning of the scheme.

We agree that not all of the factors cited by the Second Circuit in *Studley* support the district court's finding. For example, here there was no pooling of profits or resources. In addition, there was conflicting evidence in the record dealing with the extent to which Boatner assisted in planning the scheme. However, with regard to whether the participants worked independently, we believe that Boatner inappropriately focuses on their post-"accident" efforts to settle with Travelers. The participants engaged in a great deal of concerted activity in order to reach the point where they could seek individual settlements from Travelers: Boatner and the other passengers all got into the damaged car together; they jointly faked individual injuries; they all gave the same false account of the incident, claiming a hit and run accident, to the police; they all went to the same hospital together; they gave the same false accident report to medical personnel who transcribed their case histories; and they all retained the same attorney to pursue a claim against Travelers. Moreover, given the fact that Boatner knew the other participants were going to enter the car with her and feign injuries, we believe that it is highly implausible to suggest that she did not agree with the other participants to jointly file their fraudulent claims against Travelers with the same attorney. Thus, there was an abundance of evidence that the fraud arising out of the staged accident was a joint effort.

The case law of this circuit strongly supports the district court's decision to hold Boatner responsible for the entire loss suffered by Travelers. In *United States v. Smith*, 897 F.2d 909 (7th Cir.1990), defendant Smith, a member of a religious sect, engaged in a conspiracy to defraud by making purchases on counterfeit credit cards. She and coconspirator Banks made fraudulent purchases for other members of their sect, as well as for their own personal expenses. Although Smith personally charged only about $42,000 using the phoney cards, the district court found that the loss attributable to Smith's criminal conduct amounted to $272,000, which was the total loss from all fraudulent charges made by Smith and Banks. We affirmed, noting that the losses in excess of $42,000 were reasonably foreseeable in light of the conspiracy. *Id.* at 910–11.

In *United States v. Colello*, 16 F.3d 193 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2153, 128 L.Ed.2d 878 (1994), defendant Colello ran an insurance fraud scheme that resulted in losses to various insurance companies totaling over $660,000. The scheme involved, among other ploys, staged automobile accidents, based on which the participants would submit false insurance claims for personal injuries, lost wages, and property damage. In sentencing Colello, the district court calculated the victims' losses based on the total amount of money out of which the insurance companies had been defrauded, rather than simply based on that portion of the total pocketed by Colello. We affirmed, noting that § 2F1.1(b) emphasizes the victim's loss rather than the defendant's profit. We concluded that "the district court's decision to look beyond Mr. Colello's profit was a correct application of the law." *Id.* at 197.

In the face of this contrary precedent, Boatner attempts to analogize her situation to that in *United States v. Studley*, 47 F.3d 569 (2d Cir.1995). In that case, defendant Studley, a telemarketing salesman, pled guilty to fraudulently inducing a customer to pay an application fee for a loan that he knew the customer would never receive. The operation where the defendant worked employed about ten to twenty sales representatives, all of whom were making similar false representations to other customers. The trial court found that Studley was responsible for the entire amount of loss caused by the telemarketing operation during the term of his employment, about $120,000, even though he personally caused only about $5000 to $10,000 of the loss himself. The Second Circuit vacated Studley's sentence on the ground that there was insufficient evidence

to establish that Studley had agreed to participate in or jointly undertake the fraudulent activity of the other sales representatives. In reaching this conclusion, the Second Circuit noted that rather than pooling his profits or resources with the other participants, he worked to maximize his own profits, and that he had no part in the design of the telemarketing scam. *Id.* at 576.

*Studley* presents a different factual scenario than what was presented to the district court in this case. Whereas in *Studley* each telemarketer pursued different victims independently, here, the various "injured passengers" worked together to defraud one victim. They concocted a common story; they feigned injuries together; they lied to the police together; and they retained the same attorney to pursue a fraudulent claim against a single victim, Travelers. Clearly, the other passengers' claims against Travelers were part of "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others." Boatner is accountable for those claims because they were (1) in furtherance of the jointly undertaken criminal activity, and (2) reasonably foreseeable in connection with that criminal activity. The district court did not commit error in concluding that "the actions of the defendant and the other parties in this accident were jointly undertaken" and that it was reasonably foreseeable that the amount of the loss would exceed $20,000.

## B.  More than Minimal Planning

▮  Boatner challenges the trial judge's finding that she engaged in "more than minimal planning" and thus deserved a two-point enhancement under U.S.S.G. § 2F1.1(b)(2).[4] Based on the commentary to § 1B1.1, we have concluded that a sentence may be enhanced on the ground that it involved "more than minimal planning" in three situations: where "1) there is more planning than is typical for commission of the offense in simple form;  2) steps are taken to conceal the offense;  or 3) criminal acts, each of which are not purely opportune, are repeated over

a period of time." *United States v. Brown,* 47 F.3d 198, 204 (7th Cir.1995).

▮  The probation officer responsible for the presentence report stated to the district court that "the offense involved more than minimal planning as it involved repeated acts over a period of time, namely repeated physician visits, in order to increase the amount of settlement." PSR at 5. The district court adopted the position of the investigating and recommending probation officer and awarded a two-point increase for more than minimal planning. We review the district court's enhancement for more than minimal planning for clear error. *United States v. Maciaga,* 965 F.2d 404, 406 (7th Cir.1992).

▮  Boatner acknowledges that she made a number of trips to secure unnecessary medical care. However, she argues that the district court should have looked to whether she engaged in multiple, distinct frauds (*i.e.,* multiple crimes, each constituting an independent fraud), and not focus on whether she engaged in repeated acts to accomplish one fraud:

> While these trips to health care providers may have been fraudulent, they were necessary to carry out the scheme to defraud Travelers Insurance. Without the appropriate medical documentation to substantiate defendant Boatner's feigned injuries, there would be no damages for defendant Boatner to recover. More importantly, defendant Boatner's repeated visits to health care providers were part of the one scheme to defraud Travelers Insurance, not separate repeated crimes.

(Appellant's Br. 22).

Contrary to Boatner's suggestion that she had to engage in multiple, distinct frauds before she was eligible for an upward adjustment for more than minimal planning, engaging in repeated acts to accomplish a single fraud is sufficient to constitute more than minimal planning. *See United States v. Channapragada,* 59 F.3d 62, 65–66 (7th Cir. 1995) (defendant misrepresented value of collateral and repeated same lie three more times when lender divided loan into several

---

4.  Section 2F1.1 pertains to offenses involving fraud or deceit.  Subsection (b)(2) provides: "If
the offense involved ... more than minimal planning ... increase by 2 levels."

smaller, less risky loans); *United States v. Clements*, 73 F.3d 1330, 1340–41 (5th Cir. 1996) (defendant repeated the same false statement in furtherance of one central scheme to evade paying payroll taxes). Boatner's initial false claim of back and neck injuries at Methodist Hospital and her numerous trips to receive unnecessary medical care helped inflate her potential settlement with Travelers. It is more than obvious that these repeated doctor visits were not "purely opportune." Thus, the district court did not clearly err in concluding that Boatner engaged in more than minimal planning.

■ Although we have concluded that Boatner earned an enhancement for more than minimal planning because her crime involved repeated trips to the doctor to inflate her fraudulent claim, we note that she also qualifies for the enhancement on an alternate ground: her offense required more planning than is typical for commission of mail fraud in a simple form. U.S.S.G. § 1B1.1 comment. (n.1(f)). The elaborate scheme underlying this case of mail fraud-coordinating a bogus story, entering a car that had previously been damaged for the sole purpose of defrauding the insurance company, feigning injuries, calling the police to the scene, lying to the police, going to the hospital emergency room and giving the same false account of the "accident" to the attending medical personnel, making repeated visits to various doctors, and hiring an attorney to file a claim with the insurance company—easily constitutes more planning than is typical for commission of mail fraud in a simple form. *See United States v. Levinson*, 56 F.3d 780, 782 (7th Cir.1995) (suggesting that inflating a valid insurance claim on the spur of the moment might constitute minimal planning for mail fraud). The scheme was organized down to the last detail and thus justified a finding of more than minimal planning.

### C. Role in the Offense

■ Claiming that she was a "minor participant" in the scheme to defraud Travelers, Boatner contends that the district court erred in refusing to accord her a reduction in her offense level for her alleged minor role in the offense. We review the district judge's determination regarding a defendant's role in the offense for clear error. *United States v. McDonald*, 22 F.3d 139, 144 (7th Cir.1994).

■ A defendant is entitled to a two-point reduction in his offense level if he is found to be a "minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). "For purposes of § 3B1.2(b), a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." *Id.*, comment. (n. 3). Indeed, a defendant " 'must be substantially less culpable that the average participant' " in order to warrant a reduction under § 3B1.2. *United States v. Jones*, 55 F.3d 289, 293 (7th Cir.) (quoting *United States v. Kerr*, 13 F.3d 203, 206 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1629, 128 L.Ed.2d 353 (1994)), *cert. denied*, —— U.S. ——, 116 S.Ct. 161, 133 L.Ed.2d 104 (1995). Here, the district court found that Boatner

> was not less culpable than the majority of other participants in this fraud. And pursuant to 3B1.2, she should not receive a reduction for mitigating role.
>
> The Court finds that the acts that she did were the same as the other individuals; i.e., being involved in an accident, seeing doctors, making a claim and collecting a check.

Boatner argues that she was less culpable than others in the scheme. She compares her role as an "injured passenger" to the roles of others such as Attorney Levinson, who represented the passengers in their claims against Travelers, and Everett Warren, the person who staged the accident. However, the question is not simply whether there were others who were more culpable than the defendant. The issue is whether the defendant was less culpable than "most other participants." In the present case, most of the participants in the scheme were people whose roles were identical to Boatner's—each one of them pretended to be injured passengers.[5] Certainly, Boatner was

---

**5.** The July 30, 1992 staged accident involving the Ford Taurus was just one of a number of staged

accidents alleged in the indictment. The vast majority of those charged in the indictment were

not substantially less culpable than the other participants. The district court did not clearly err in finding that Boatner was not eligible for a two-point reduction for being a "minor participant."

### D. Acceptance of Responsibility

■ Boatner maintains that the trial court erred in refusing to accord her a downward adjustment for acceptance of responsibility. The district court denied Boatner the reduction because Boatner violated two conditions of her bond: (1) that she refrain from any use of a narcotic drug, and (2) that she submit to and participate in random urine drug testing and drug treatment programs at the direction and discretion of Pretrial Services. On appeal, we must bear in mind that the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and will be reviewed only for clear error. *United States v. Schuler*, 34 F.3d 457, 460 (7th Cir.1994).

Under U.S.S.G. § 3E1.1(a), a defendant is entitled to a two-point reduction in his offense level if he clearly demonstrates acceptance of responsibility for his offense. The application notes to § 3E1.1 provide a nonexhaustive list of actions that may be considered in determining whether a defendant has accepted responsibility. Included among the relevant actions listed are "voluntary termination or withdrawal from criminal conduct," and "post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment)." U.S.S.G. § 3E1.1, comment. (n. 1(b) & (g)).

■ Boatner argues that, although she was remorseful and accepted responsibility for her part in the fraudulent scheme, she was unable, due to a drug addiction, to terminate all illegal drug usage. She claims that the denial by the trial judge of a two-point reduction for acceptance of responsibility had the practical effect of punishing her for being an addict.

Boatner cites only one case in support of her position, *United States v. Kirkland*, 28

F.3d 49 (7th Cir.1994). Boatner points to a footnote in *Kirkland* where we stated:

> As we held in *United States v. McDonald*, 22 F.3d 139, 144 (7th Cir.1994), "[a] district court may conclude that continued criminal activity, such as use of a controlled substance, is not consistent with acceptance of responsibility," even where the underlying offense to which the defendant has pled guilty is not drug-related. However, this is not to say that a district judge must consider drug use or that drug use will always preclude the finding of an acceptance of responsibility. Although not the case today, we can envision situations in which, say, an addict genuinely accepts responsibility for his offense and drug use but because of his addition will occasionally test positive for drug use. Under these circumstances, a sentencing judge might find the defendant accepted responsibility to warrant the reduction under § 3E1.1.

*Kirkland*, 28 F.3d at 51 n. 2.

The hypothetical situation that we described in *Kirkland* deals with an individual who is addicted to drugs yet nevertheless genuinely accepts responsibility for his offense and drug use. This is not before us in Boatner's case. Boatner did not merely fail an occasional drug test. For almost a year, from December 1994 until her sentencing, she continually failed to cooperate with the various drug therapy proceedings, including but not limited to drug testing and counseling programs in which she was ordered to participate. While in the drug program at Gary Community Mental Health, Boatner failed to appear for drug testing and counseling on more than ten occasions. In addition, on several occasions, she tested positive for cocaine.

After Kilburg sought to have her bond revoked in June 1995, Boatner agreed to participate in an intensive outpatient program at Tri–City Mental Health. Her compliance with the mandates of that program reflected the same pattern of non-compliance that she demonstrated when ordered to attend the Gary Community Mental Health program. Participants in the Tri–City pro-

---

alleged to have posed as injured passengers. Even considering just Counts 18 and 19, most of

those charged therein were alleged to have played the role of an injured victim.

gram were supposed to meet four times a week for intensive group counseling. Boatner appeared for only two of her scheduled drug tests, one on August 14 and another on August 21. Although she was supposed to participate in the program on the following 22nd, 23rd, and 24th of the month, she failed to appear. Boatner claimed that illness prevented her from attending more often, yet she failed to produce a doctor's medical excuse explaining her absences from the program when directed by probation officer Kilburg. Moreover, even when she finally did produce a doctor's note at the October 6 hearing, the note explained, at most, her absences between August 29 and September 14. It failed to explain her absences before August 29. The note merely stated that Boatner had "been sick since 8/29" and would be able to return to work on September 14. Thus, although Boatner claimed that she started feeling sick after August 21, the evidence that she showed to the district court supported only the conclusion that she fell sick on August 29. In addition, the only explanation she offered for failing to appear for drug testing and counseling after September 14 was that she had returned to work. To top it all off, contrary to her prediction, she tested positive for cocaine on the day of her first sentencing hearing.

These facts do not bode well for Boatner's challenge to the district court's finding that she did not accept responsibility. Unfortunately for Boatner, the case law she cites to us does not help her any. In *Kirkland*, 28 F.3d 49, defendant Kirkland pled guilty to being a felon in possession of a firearm. As part of the plea agreement, the government agreed to recommend a reduction under § 3E1.1, so long as Kirkland continued to demonstrate acceptance of responsibility and abstained from using any controlled substances. After his guilty plea, Kirkland tested positive for marijuana three times and failed to appear for testing twice. The district court refused to grant Kirkland a reduction for acceptance of responsibility. On appeal, we stated:

> Kirkland continued to use drugs, in contravention of his plea agreement and at odds with his claimed acceptance of responsibility. However, far more important, he failed even to show up for drug testing two times after his plea agreement.... [T]he fact that Kirkland did not show up for testing is convincing evidence that he had not accepted responsibility, notwithstanding his later entry into a drug testing program.

*Kirkland*, 28 F.3d at 51. We affirmed the trial court's finding that Kirkland had not accepted responsibility.

Boatner's pattern of failing drug tests and failing to appear for drug tests and drug counseling mirrors the pattern we observed in *Kirkland*. Boatner claims that *Kirkland* is distinguishable because, unlike Kirkland, who used marijuana, Boatner was "drug dependent and in deep denial of her cocaine dependency." (Appellant's Br. 32). We are not persuaded that Boatner's attempt to distinguish *Kirkland* succeeds. Despite the fact that Kirkland used marijuana instead of cocaine, he too claimed to be drug dependent. *Kirkland*, 28 F.3d at 50. As for Boatner's claim that she was in "deep denial of her cocaine dependency," this contention fails to square with her testimony before the district court. She never told the judge that she was not addicted to cocaine. Rather, she blamed her failure to attend drug counseling sessions on various other causes. Furthermore, she explicitly acknowledged that she had an addiction to cocaine. Thus, we are not convinced that *Kirkland* is distinguishable as Boatner contends.

In any case, even if Boatner were in "deep denial" of her drug dependency, this does not explain her frequent refusal to undergo drug testing and counseling. Presumably, one who denies having a drug problem can and must comply with an order of the court to undergo drug treatment. Indeed, Boatner successfully completed an inpatient drug treatment program before being referred to Tri–City Mental Health for continued treatment in an intensive outpatient program. Apparently, those in charge of the inpatient drug treatment program concluded at that time that Boatner had made sufficient progress in that program such that she could responsibly handle the demands of an intensive outpatient drug treatment program.

Thus, regardless of whether Boatner was in "deep denial" of her drug dependency, the evidence clearly demonstrates that she could have and should have attended the drug treatment programs as mandated by the court. Accordingly, we refuse to hold that the district court committed clear error in refusing to find that Boatner had accepted responsibility.

## IV. CONCLUSION

Stephanie Boatner's sentence is AFFIRMED.