165 F.3d 33
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Marcus A. BROWN, Defendant-Appellant.
 No. 98-1536.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 9, 1998.
Decided Nov. 23, 1998.
 
 Appeal from the United States District Court for the Western District of Wisconsin. Case No. 97-CR-0085-S-01. John C. Shabaz, Chief Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. ILANA DIAMOND ROVER, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Marcus A. Brown pleaded guilty to using another person's social security number with intent to deceive in violation of 42 U.S.C. § 408(a)(7)(B). The district court determined that Brown's offense conduct warranted a two-point increase in offense level for "more than minimal planning" under U.S.S.G. § 2F1.1 (b)(2)(A). Brown appeals the two-point increase. We affirm.
 
 
 2
 Brown admits that he worked with another man, Walter Sprouls, in an attempt to defraud the First Federal Saving Bank of Madison. Wisconsin ("First Federal"). Sprouls helped Brown impersonate victim Elagha H. Hatem. Sprouls gave Brown a counterfeit birth certificate in Hatem's name, as well as Hatem's real social security card. In March 1997 Brown used these papers to obtain a Wisconsin driver's license in Hatem's name. On March 24, 1997, Brown went to First Federal, where he used the fake driver's license and Hatem's social security number to open a checking account in Hatem's name. He received temporary checks and a check-cashing card and deposited $10.00 into the account. First Federal's surveillance cameras recorded Brown opening the account. On April 30, 1997, Brown and Sprouls deposited five counterfeit checks in Hatem's name at five different First Federal night deposit boxes, located in the cities of Madison, McFarland, Middleton, and Fitchburg. Sometime before they deposited the checks, Brown watched Sprouls type out the five counterfeit checks. After Sprouls prepared the checks, Brown endorsed each check in Hatem's name and filled out a deposit slip for each one. The checks totaled $39,274.38.
 
 
 3
 Shortly after Brown and Sprouls made the deposits, a First Federal employee noticed the large amounts and did not credit the Hatem account. First Federal investigated and learned that the checks were counterfeit. On May 1, 1997, Brown called First Federal's 800 number. He learned that the checks had not been credited and that the account had been closed. He then destroyed the temporary checks, the check-cashing card, and the fake identification in Hatem's name. On August 13, 1997, an FBI agent followed up a lead and showed Brown's military parole supervisor the First Federal videotape of Brown opening the fake account. Brown's military parole supervisor identified him.
 
 
 4
 We use the clear error standard to review the district court's determination that Brown's offense involved "more than minimal planning." United States v. Green, 114 F.3d 613, 618 (7th Cir.1997); United States v. Channapragada, 59 F.3d 62, 65 (7th Cir.1995). We conclude that the district court did not err by increasing Brown's offense level by two levels for more than minimal planning.
 
 
 5
 Section 1B1.3(a) provides that specific offense characteristics (like the more than minimal planning adjustment) shall be determined on the basis of all relevant conduct. Relevant conduct includes all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant. U.S.S.G. § 1B1.3(a)(1)(A). It also includes all reasonably foreseeable acts of others that further a jointly undertaken criminal activity or occur during the commission of the offense of conviction, in preparation for that offense or in the course of attempting to avoid detection or responsibility for that offense. U.S.S.G. § 1B1.3(a)(1)(B). Jointly undertaken criminal activity is defined as a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others. U.S.S.G. § 1B1.3, comment. (n. 2). In this case, Brown admits specific knowledge of the acts Sprouls took to further the joint scheme, including making the false birth certificate, obtaining the social security card in Hatem's name, and procuring and typing out the counterfeit checks. Thus, Sprouls' acts were necessarily reasonably foreseeable to Brown, so application of the more than minimal planning adjustment for Brown's offense level was proper. See, e.g., Green, 114 F.3d at 618 (holding that because a defendant is accountable for the foreseeable consequences of his accomplice's actions, the district court should look to the conduct of the accomplice when deciding whether to apply the more than minimal planning adjustment); United States v. Blackwell, 49 F.3d 1232, 1234-1235 (7th Cir.1995) (same).
 
 
 6
 Brown's conduct also independently satisfies the definition of more than minimal planning found in the commentary to § 1B1.1. That definition provides:
 
 
 7
 "More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense.... "More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune.
 
 
 8
 Adjustments for more than minimal planning are proper if any one of the three factors exist. Green, 114 F.3d at 618; United States v. Lewis, 41 F.3d 1209, 1213 (7th Cir.1994). Because Brown's offense was not "simple" and because Brown committed repeated acts that were not purely opportune, the district court did not err in applying the adjustment for more than minimal planning.
 
 
 9
 The district court properly found that Brown engaged in planning far in excess of that necessary to commit "simple" fraudulent use of a social security number. See, e.g., United States v. Boatner, 99 F.3d 831, 838 (7th Cir.1996) (holding that a mail fraud scheme could not be "simple" mail fraud because it involved advanced planning of a phony car accident and coordination of stories with the police and medical personnel); United States v. Lennick, 917 F.2d 974, 979 (7th Cir.1990) (holding that Lennick's behavior involved more than "simple" perjury because he procured false proof in advance to support his lie). Similarly, Brown performed a series of acts that were part of a larger scheme to defraud First Federal. For example, the district court pointed to the fake driver's license that Brown procured, the account that Brown opened in Hatem's name, and the five checks that Brown endorsed and deposited with Sprouls' help.
 
 
 10
 The district court also properly found that Brown committed repeated acts that were more than purely opportune. See, e.g., Green, 114 F.3d at 617 (7th Cir.1997) (upholding an adjustment for more than minimal planning where the defendant made more than fifteen visits to physicians to conceal an insurance fraud, and thus committed "repeated acts"); Channapragada, 59 F.3d at 65-66 (upholding an adjustment for more than minimal planning where the defendant made four misrepresentations regarding a fraudulent document that he had prepared). Similarly, the district court pointed to Brown's "repeated acts" of making the five separate deposits.
 
 
 11
 Brown argues that he did not commit "repeated" acts because the deposits were part of one scheme, and all five deposits were made in one day. However, in Green, we observed that the defendant did not have to participate in entirely separate schemes for the adjustment to apply, as long as his acts were repetitive and presented one consistent way of carrying out the fraudulent plan. 114 F.3d at 619. Likewise, in Channapragada, the defendant tried to argue that he committed only one misrepresentation in a single bank loan. 59 F.3d at 65. However, we held that the defendant committed "repeated acts" because he submitted the same fraudulent document four different times. Id. In this case, Brown, too, committed repeated acts because he made each deposit individually with a separate forged check and separate deposit slip. Brown had to travel to each bank branch to make the five different deposits, repeating the same acts at each bank. The fact that the acts took place on the same day does not make them less distinct or less repeated.
 
 
 12
 The district court also noted that Brown's acts were not purely opportune, but "deliberative." The district court pointed out that Brown had to perform many acts over a period of time, in accordance with the scheme which he "hatched" with Sprouls. However, Brown argues that because Sprouls prompted him to perform the acts, they were "purely opportune." The argument fails because whether urged by Sprouls or not, Brown himself committed the acts with forethought. Therefore, the acts could not have been "purely opportune." See, e.g., United States v. Ojo, 916 F.2d 388, 391-392 (7th Cir.1990). In that case, we held that because the defendant obtained and used multiple forms of false identification at two banks, she exercised forethought and planning. We affirmed the use of the more than minimal planning adjustment for the defendant's repeated acts. The offense involved was the same as Brown's: using a false social security number with intent to deceive. Id.
 
 
 13
 Because the district court properly considered both Brown's and Sprouls' actions as relevant conduct, and because the district court properly evaluated how Brown's individual actions met the definition of more than minimal planning, we AFFIRM the two-point increase in Brown's offense level.