**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Walter J. RAYBORN, Jr.,**
**Defendant–Appellant.**

**No. 90–3679**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

April 9, 1992.

---

Herbert R. Kraft, Tallahassee, Fla., for defendant-appellant.

Stephen P. Preisser, Asst. U.S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before KRAVITCH, HATCHETT and ANDERSON, Circuit Judges.

PER CURIAM:

Walter J. Rayborn, Jr., the appellant, prepared and filed federal income tax returns in the names of persons claiming to own fishing boats. Under Title 26 of the Internal Revenue Code, commercial fishermen may claim a tax credit on their personal tax returns for excise taxes assessed on fuel vessels use on inland and intercoastal waterways. This particular tax credit provides claimants with a dollar-for-dollar reduction in the tax and thus, can generate large tax refunds.

To promote his tax fraud scheme, Rayborn persuaded others to serve as recruiters to seek out persons who would allow their names and social security numbers to be employed to generate fraudulent tax refunds. Rayborn would then prepare the returns for these persons claiming the ownership of a commercial fishing vessel. Rayborn shared the proceeds of the refunds generated with the recruiters and the persons who allowed their names and social security numbers to be used. After pleading guilty to this tax fraud scheme, the district court sentenced Rayborn to thirty-three months in the federal prison system. The district court ordered Rayborn to surrender on August 1, 1988.

During the time Rayborn was allowed to remain free on his own recognizance, he committed the offenses involved in this appeal. Before June 2, 1988, Rayborn approached Charles Dereberry and entered into an agreement with him to file a fraudulent 1987 tax return. The return stated that Dereberry owned a commercial fishing vessel and that he was entitled to a federal income tax refund. Dereberry did not sign the tax return, but he did show Rayborn copies of his signature. Rayborn then forged Dereberry's signature on the fraudulent tax return and filed it with the Internal Revenue Service (IRS).

Based on the 1987 tax return Rayborn filed, the IRS paid Dereberry a tax refund of $22,192. Upon receipt of the refund monies, Dereberry paid Rayborn $5,000.

On July 11, 1988, Rayborn filed a fraudulent income tax return for 1986 using Dereberry's name but without Dereberry's knowledge. In the income tax return, Rayborn sought a refund of $23,289 based on the tax credit for commercial fuel use. After forging Dereberry's signature, Rayborn submitted the return to the IRS. On this occasion, the IRS rejected the fraudulent return because Dereberry had previously filed a legitimate 1986 tax return. Since the IRS did not pay this refund amount, Rayborn's actions caused the IRS to incur a total loss of the amount paid on the fraudulent 1987 return, $22,192.

On March 28, 1990, a grand jury in the United States District Court for the Northern District of Florida indicted Rayborn for three counts of conspiracy and making fraudulent claims to the Internal Revenue Service, all violations of 18 U.S.C. § 287. Rayborn entered into an agreement with the government in which he pleaded guilty to Count II of the three-count indictment. Specifically, Count II of the indictment detailed the transaction whereby Rayborn received $5,000 from Dereberry for the fraudulent 1987 tax return. Count I of the indictment charged a conspiracy, and Count III charged Rayborn's conduct in submitting the fraudulent 1986 tax return. In

accordance with the plea agreement, Counts I and III were dismissed.

On July 17, 1990, the district court sentenced Rayborn pursuant to the Sentencing Reform Act of 1984. In arriving at Rayborn's sentence, the district court weighed the conduct charged in Count III of the indictment to determine Rayborn's base offense level. The district court also considered Rayborn's related case in which he was convicted of similar charges on May 9, 1988 in Alabama. At the time Rayborn committed the instant offense, he had not served any prison time for his May 9, 1988, conviction.

In arriving at Rayborn's base offense level, the district court included in the amount the IRS lost not only the $22,192 the IRS suffered in actual losses, but also the $23,289 claimed in the fraudulent, but unpaid, 1986 return. Under United States Sentencing Guidelines § 2F1.1(b)(1), the inclusion of the potential losses in Count III caused Rayborn's sentence to be increased by five levels.

The district court also added three points to Rayborn's sentence calculation pursuant to Sentencing Guidelines § 4A1.1(a) because it included in Rayborn's criminal history a sentence of imprisonment for his 1988 offense, even though he had not begun serving that sentence at the time he committed the instant offense. Consequently, the district court sentenced Rayborn to twenty-one months in prison to run consecutively to the Alabama sentence.

## I.  ISSUES

Rayborn raises two issues on appeal. The first issue is whether the district court erred by increasing Rayborn's base offense level under Sentencing Guidelines §§ 1B1.3 and 2F1.1(b)(1) for the amount lost as a result of his offense conduct. The second issue is whether the district court erred by including in Rayborn's criminal history an assessment of a sentence of imprisonment for the 1988 offense under Sentencing Guidelines § 4A1.1, even though Rayborn had not begun serving the sentence until after his sentencing in this case.

## II.  CONTENTIONS

As to the first issue, Rayborn contends that the district court incorrectly cumulated the actual and potential losses to the IRS. As to the second issue, Rayborn contends that the district court erroneously computed the point valuation for his prior criminal history.

## III.  DISCUSSION

Rayborn first contends that the sentencing judge incorrectly applied guideline section 2F1.1(b)(1) to his case. Section 2F1.1 establishes a base offense level of six for crimes involving fraud or deceit, and provides for an increase in the base offense level which corresponds to the amount of loss the district court calculates. Thus, under section 2F1.1(b)(1), the higher the amount of calculated loss, the more the base offense level is increased.

Rayborn asserts that the district court erroneously calculated the total loss amount when it cumulated losses detailed under Counts II and III of the indictment because Count III was dismissed. Rayborn further argues that the loss was miscalculated because a portion of the loss described in Count II was attributable to Dereberry. Rayborn argues that his base offense level should be calculated using a loss figure of $5,000. Rayborn further argues that since his sentence was increased for more than minimal planning, a loss figure over $5,000 would punish him twice for the same offense.

■ Rayborn's first argument, that the losses detailed in Counts II and III of the indictment cannot be cumulated, is incorrect. Under guideline section 2F1.1 and the applicable commentary, it is clear that a district court may consider losses from dismissed counts of an indictment when determining the total loss amount.

The comments accompanying section 2F1.1 (note 6 and note 7), provide:

Some fraudulent schemes may result in multiple count indictments, depending on the technical elements of the offense. The cumulative loss produced by a com-

mon scheme or a course of conduct should be used in determining the offense level, regardless of the number of counts of conviction. [Citation omitted.]

Valuation of loss is discussed in the commentary to section 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft). Consistent with the provisions of section 2X1.1 (Attempt, Solicitation, or Conspiracy), if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss....

This court established that all losses caused by fraud or deceit which are governed by Sentencing Guidelines § 2F1.1 may be imputed to a defendant who was a member of the conspiracy which caused those losses. *United States v. LaFraugh,* 893 F.2d 314, 317 (11th Cir.), *cert. denied,* 496 U.S. 911, 110 S.Ct. 2601, 110 L.Ed.2d 281 (1990). Hence, the district court properly cumulated the actual losses detailed in Count II of the indictment and the attempted inflicted losses detailed in Count III of the indictment, even though Count III was dismissed.

Sentencing Guidelines § 1B1.3 concerning relevant conduct supports this conclusion. Section 1B1.3 states that all acts and omissions that are part of the same course of conduct or common scheme may be used in calculating a defendant's sentence. The record indicates that the methods which Rayborn used to defraud the government were part of the same course of conduct and displayed a common scheme. Therefore, under section 1B1.3, the district court correctly computed the total loss amount Rayborn caused.

■ Rayborn's second argument concerning the total loss amount figure is that the loss amount should have been limited to the $5,000 profit he made from his tax scheme. Rayborn also argues that since his sentence was increased for his role in the offense and for the fact that the offense took more than minimal planning, a total loss figure greater than $5,000 punishes him twice for the same conduct. We found this argument to be meritless in

*United States v. Villarino,* 930 F.2d 1527, 1529 (11th Cir.1991).

In *Villarino,* we held that a defendant's sentence could be enhanced for more than minimal planning even though the sentence was also enhanced five levels for a loss in excess of $40,000. We noted that the guidelines provide for cumulative, not alternative, enhancements. Therefore, Rayborn's contention that his sentence punishes him twice for the same conduct is meritless.

■ The second contention Rayborn raises on appeal is that the district court erred by including in his criminal history assessment three points for a sentence of imprisonment for his 1988 conviction even though he had not begun serving the sentence at the time he committed the offense in this case. Rayborn notes that in the commentary to guideline section 4A1.2, the section providing definitions and instructions for computing criminal history, it states, "[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence...." Thus, Rayborn argues that since he had not actually served a period of imprisonment at the time he committed the 1990 offense, the three points added for his criminal history were improperly included in his sentence.

Rayborn's second contention also has no merit. In *United States v. Martinez,* 931 F.2d 851, 852 (11th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 268, 116 L.Ed.2d 221, this court held that a defendant who had been sentenced but had not begun to serve his sentence at the time he committed a second offense was "under a criminal justice sentence" when he committed his second offense. The court stated that once a sentence has been imposed, the defendant "was subject to the control of that sentence and could have been required to report at any time." *Martinez,* 931 F.2d at 853.

The facts in *Martinez* are also analogous to Rayborn's case. The defendant in *Martinez* was assigned three points for his criminal history under section 4A1.1(a) even though he had not yet begun to serve his prior sentence at the time of the com-

mission of his second offense. *Martinez* at 852; *see also United States v. Walker*, 912 F.2d 1365 (11th Cir.1990). Similarly, Rayborn's prior sentence of imprisonment occurred on May 9, 1988, but he remained free on bond until August 1, 1988. It was during the time between Rayborn's sentencing and his voluntary surrender that he committed the present offense. By the time the district court sentenced Rayborn for the present offense, he had already spent almost two years in prison. Thus, based on our holding in *Martinez*, we find that the district court properly computed Rayborn's sentence when it considered a three-point enhancement due to Rayborn's criminal history under section 4A1.1(a) of the guidelines.

### CONCLUSION

Accordingly, the conviction and sentence are affirmed.

AFFIRMED.