151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby ODUS, Defendant-Appellant.
 No. 97-1443.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 14, 1998.*
Decided May 14, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 95-CR-671, Paul E. Plunkett, Judge.
 
 
 1
 Before Hon. Joel M. Flaum, Hon. Michael S. Kanne, Hon. Terence T. Evans. Circuit Judges.
 
 ORDER
 
 2
 Bobby Odus was convicted of conspiracy to make utter or possess counterfeit American Express Travelers' Cheques. See 18 U.S.C. §§ 2371.513(a). He contends that his conviction must be reversed and his sentence vacated because of a wide range of errors, including violations of the Speedy Trial Act, insufficiency of the evidence, variance between the indictment and the evidence at trial, due process violations and miscalculations under the Sentencing Guidelines. We affirm.
 
 
 3
 On October 26, 1995, Odus was arrested by United States Marshals for failure to surrender for sentencing on prior convictions for tax fraud and counterfeiting. Odus asked the marshals if they would permit him to drop off a note at his nearby hotel room to let his "wife," a woman named Tina Henderson, know what had happened. The marshals granted his request: the note informed Tina that she should pick up Odus' car in the Kinko's Copy Center parking lot where Odus had been arrested, and that she should "[t]ake care of the rest of the business. Go inside storage, too." That same day, a man named Stanley Henderson, Tina's ex-husband, was arrested at a local supermarket while attempting to pass a series of counterfeit $100 American Express Travelers' Cheques he had earlier stolen from Tina's home. At the time of his arrest, Mr. Henderson was carrying false identification he had obtained with Odus' assistance. Mr. Henderson was then interviewed by the Secret Service. His statement led the agents to Odus' hotel room, where they discovered the note Odus had earlier written to Ms. Henderson. Agents interviewed Ms. Henderson, who led them to a storage locker rented by Odus. The agents discovered counterfeit American Express Travelers' Cheques in $50 and $100 denominations, as well as other counterfeit documents, money orders, checks and identification cards. Tina Henderson's name and photograph appeared on pieces of false identification recovered from the locker, and Odus' (but not Tina's) fingerprints were discovered on many of the counterfeit monetary instruments. Odus, Ms. Henderson and a Kinko's employee named Jaffary were subsequently arrested and indicted for conspiracy to counterfeit. See 18 U.S.C. §§ 2, 371,513(a).
 
 
 4
 At Odus' trial, the evidence revealed that the counterfeit travelers' checks were photocopies of eighteen genuine American Travelers' Cheques purchased by Odus and Ms. Henderson. Odus had photocopied the genuine checks at the Kinko's center where he was subsequently arrested; he and the Hendersons then negotiated the counterfeits. Employees of the copy center testified that Odus had been a frequent customer and had been observed counterfeiting up "to a ream," that is, five hundred, 8 1/2 X 11 sheets of "some form of currency" at the center's color copiers. Checks photocopied at Kinko's and bearing the serial numbers of genuine checks purchased by Odus and Ms. Henderson were found in Odus' storage locker. In addition, Mr. Henderson testified that he asked for and received instruction from Odus on counterfeiting travelers checks and money order; that Odus had instructed him how to go about passing counterfeit checks; and that Odus had provided him with false identification and other documents so that Henderson could open bank accounts to deposit phony checks.
 
 
 5
 The jury found Odus guilty. Prior to sentencing, however, the trial judge became ill. At a status hearing held on December 20, 1996, the parties discussed with the court the possibility of reassigning the case for sentencing. Odus' attorney stated that he wanted to talk with his client; four days later he informed the court. "I talked with my client and at length, and he decided he would prefer the case. I guess, be reassigned to another judge." The interim judge then asked. "Your client.... doesn't want to wait until [the trial judge] gets back; is that the idea?" Odus' attorney replied. "Yes, your Honor." The chief judge of the district court then recommended that the sentencing phase of Odus' case be reassigned pursuant to Rule 25(b) of the Federal Rules of Criminal Procedure. The recommendation was adopted on December 26, 1996, and Odus' case was reassigned.
 
 
 6
 On January 22, 1997, Odus appeared before Judge Reinhard. After hearing argument and making specific findings of fact supported by reference to the record, Judge Reinhard imposed a sentence of forty-six months imprisonment, restitution, a period of supervised release and, because Odus is not a citizen, recommended that Odus be deported following his release.
 
 
 7
 On appeal, Odus first argues that his conviction must be reversed and the indictment dismissed because his statutory Speedy Trial rights were violated. See 18 U.S.C. §§ 3161-74. Specifically, he claims that he was indicted more than thirty days after he was arrested, and that he was held approximately 270 days before being brought to trial. His arguments, however, are unsupported by the record. An arrest warrant was executed on November 16, 1995, while Odus was serving an unrelated sentence, and Odus was indicted on December 14. The period of pre-indictment incarceration attributable to this charge thus falls within the thirty-day limit imposed under the Speedy Trial Act. See id. at § 3161(b); United States v. Ousley, 100 F.3d 75, 76 (7th Cir.1996). His contention that an interval prior to his arrest during which he had knowledge of the pending charge should be included in the calculation is meritless, see United States v. Harris, 12 F.3d 735, 736 (7th Cir.1994); United States v. Hausman, 894 F.2d 686, 688-89 (5th Cir.1990) (per curiam), as is his argument concerning the "long delay" in bringing him to trial, see 18 U.S.C. § 3164(c). Most of this "delay" was caused by the need to resolve a variety of pretrial motions and interlocutory appeals related to the case. See id. §§ 3161(h)(1)(E)-(F); Henderson v. United States, 476 U.S. 321, 326-31, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986); United States v. Cheek, 3 F.3d 1057, 1066-67 (7th Cir.1993) (additional time permissible to resolve a barrage of motions). The trial court properly excluded the time necessary to address these matters.
 
 
 8
 Odus next suggests that there was insufficient evidence of his involvement in the charged conspiracy. The jury, however, listened to numerous witnesses, including unindicted co-conspirator Stanley Henderson, who presented substantial evidence of Odus' knowledge of and participation in an agreement with others to make, utter or possess American Express Travelers' Checks. See United States v. Yusufu, 63 F.3d 505, 508-09 (7th Cir.1995); United States v. Marquez, 48 F.3d 243, 245-46 (7th Cir.1994). That some witnesses testified under plea deals does not render their testimony necessarily incredible. See United States v. Taylor, 116 F.3d 269, 273-74 (7th Cir.1997). Similarly, though Odus may dispute the trial court's credibility determinations, the assessment of witness credibility is a matter "peculiarly within the province of the Jury ." United States v. Moore, 25 F.3d 563, 567 (7th Cir.1994) (internal quotation and citation omitted). After viewing all of the evidence in the light most favorable to the government, including the evidence that American Express Corporation is an organization that operates in and affects interstate commerce, see 18 U.S.C. § 513(c)(4), United States v. Barone, 71 F.3d 1442, 1444-46 (9th Cir.1995), United States v. Chappell, 6 F.3d 1095, 1098-99 (5th Cir.1993), we conclude that a rational jury "could, would, and should have found" Odus guilty beyond a reasonable doubt, United States v. Hickok, 77 F.3d 992, 1002 (7th Cir.), cert. denied, 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800(1996).
 
 
 9
 Because the evidence was sufficient to convict Odus of the charged conspiracy, there was no variance between the indictment and the evidence presented. Odus' argument that he was convicted of a conspiracy uncharged in the indictment is thus unavailing, particularly because the evidence demonstrated that Odus himself was "at the hub" of the additional conspiracies to which he points on appeal. United States v. Shorter, 54 F.3d 1248, 1255-57 (7th Cir .1995) (internal quotation and citation omitted); United States v. Nava-Salazar, 30 F.3d 788, 795-98 (7th Cir.1994). The district court did not err in refusing Odus' proposed "multiple conspiracy" jury instruction; the instruction provided by the court correctly stated the law, adequately addressed the conspiracy evidence adduced at trial, and did not mislead the jury. Furthermore, the court's instruction explicitly informed the jury that it could not convict Odus if it found that he was not a member of the conspiracy charged in the indictment. See United States v. Powers, 75 F.3d 335, 341-42 (7th Cir.1996); Nava-Salazar, 30 F.3d at 795-98.
 
 
 10
 Odus claims that he was denied due process at sentencing: first, because he received an addendum to his PSI from the Probation Office on the eve of sentencing; and second, because the sentencing court reviewed a set of transcripts that inadvertently did not include the testimony of every trial witness. The upshot of these incidents, Odus argues, is that he was deprived of his right to address the evidence on which the court intended to base its sentence. See 18 U.S.C. § 3552(d): Fed.R.Crim.P. 32(a)(1), (c)(3); Burns v. United States, 501 U.S. 129, 135-39, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). When asked at sentencing, however, whether he would seek a continuance because of the Probation Office's tardy submission. Odus expressly declined the invitation. Moreover, he admitted that he had reviewed and discussed the PSI with his attorneys; that he had no objections to the PSI other than those previously submitted; and that he had no objections whatsoever to the factual findings in the document. There is thus no error for this court to correct. See United States v. Olano, 507 U.S. 725. 732-33, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). see also United States v. Blythe, 944 F.2d 356, 360 (7th Cir.1991); United States v. Turner, 898 F.2d 705, 713-14 (9th Cir.1990). Odus has likewise waived his right to contest the evidence reviewed by the court as background for the parties' pre-sentence submissions. After it was brought to the sentencing court's attention that the trial transcripts reviewed by the court were incomplete. Odus was granted the opportunity to supplement the record. Once again, he declined to do so, and on appeal, Odus has failed entirely to develop the argument that his rights were affected by the omission. "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991); see also Fed.R.App.P. 28(a)(6); United States v. Mason, 974 F.2d 897, 900-01 (7th Cir.1992).
 
 
 11
 Odus argues that his Sixth Amendment right to be present "at every stage of his trial" was violated because he was not present when his attorney relayed Odus' request that the case be reassigned for sentencing. Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Rule 43 of the Federal Rules of Criminal Procedure, however, provides that a defendant need not be present when, as here, "the proceeding involves only a conference or hearing upon a question of law." Fed.R.Crim.P. 43(c)(3). Odus does not claim, nor can he, that the court made "any legal or factual ruling of any type" during the reassignment conference. United States v. Graves, 669 F.2d 964, 972-73 (5th Cir.1982), nor can he seriously suggest that "a fair and just hearing [was] thwarted by his absence," Snyder v. Massachusetts, 291 U.S. 97, 107-08, 54 S.Ct. 330, 78 L.Ed. 674 (1934). He was competently represented by counsel, suffered no prejudice as a result of his absence--indeed, his request for reassignment was granted!--and could have contributed "nothing substantial to his opportunity to defend" against the charge through his presence at the conference. United States v. Veatch, 674 F.2d 1217, 1225-26 (9th Cir.1981); see also United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam); United States v. McCoy, 8 F.3d 495, 496-97 (7th Cir.1993).
 
 
 12
 Finally, Odus contends that the district court erred in determining his sentence under the Guidelines. He points primarily to the calculation of loss: the total face value of the American Express checks recovered was $88,500; an additional $104,372 in counterfeit monetary instruments was also recovered from the storage locker. The court made an explicit determination, based on testimony by American Express employees and agents of the Secret Service and the Treasury, Department, that $13,500 in one-sided monetary, instruments found in the storage locker, like the remainder of the checks and money orders recovered, were of sufficient quality to be negotiated and could thus be considered "intended loss." U.S.S.G. § 2F1.1, comment. (nn.7, 10); see also United States v. Ramacci, 15 F.3d 75, 77-79 (7th Cir.1994); United States v. Lamere, 980 F.2d 506, 511-13 (8th Cir.1992). That Odus' conspiracy was discovered before all of the counterfeits could be negotiated is irrelevant for purposes of loss calculation. See, e.g., United States v. Strozier, 981 F.2d 281, 284 (7th Cir.1993); United States v. Schneider, 930 F.2d 555, 556, 558-59 (7th Cir.1991). The facts set forth in the record and in the PSI, adopted by the district court without objection, provide a sufficient basis on which to conclude that the counterfeit instruments uncharged in the indictment could be considered relevant for purposes of Odus' sentencing calculation. See U.S.S.G. § 1B1.3(a) & comment. (n.9); United States v. Acosta, 85 F.3d 275, 279-81 (7th Cir.1996). The finding that Odus intended to cause a loss equivalent to the face value of the recovered counterfeits is not clearly erroneous.
 
 
 13
 The remainder of Odus' sentencing arguments do not warrant extended discussion. While the consolidation for sentencing of Odus' two prior convictions would normally have rendered them a single "related" felony in calculating Odus' criminal history category, Odus' arrest for the first offense (tax fraud) prior to his commission of the second offense (counterfeiting) denies him the criminal history point reduction that otherwise would have followed. See U.S.S.G. §§ 4A.1.1(a), (f) & comment. (n. 6). id. at § 4A1.2 comment. (n. 3); United States v. Coleman, 38 F.3d 856, 859-60 (7th Cir.1994). The two-point enhancement of Odus' criminal history calculation awarded by the district court was properly predicated on Odus' escape status at the time he committed the acts underlying this appeal. See U.S.S.G. §§ 4A1.1(d)-(e); id. at § 4A1.2(n); United States v. Damon, 127 F.3d 139, 147 (1st Cir.1997). United States v. Rayborn, 957 F.2d 841, 844-45 (11th Cir.1992); United States v. Lillard, 929 F.2d 500, 503-04 (9th Cir.1991). The record likewise sustains the district court's findings concerning multiple victims, the level of planning involved in the offense, and Odus' leadership role in the conspiracy. See U.S.S.G. § 2F1.1(b)(2) & comment. (nn.2-3); id. at § 3B1.1(c), United States v. Boatner, 99 F.3d 831, 837-39 (7th Cir.1996); United States v. Michalek, 54 F.3d 325, 333-34 (7th Cir.,1995); Nava-Salazar, 30 F.3d at 802-03. Though Odus challenges the court's determination that he failed to take responsibility for his conduct, see U.S.S.G. § 3E.1.1; United States v. Beserra, 967 F.2d 254, 255-56 (7th Cir.1992), his admission to the sentencing judge while exercising his right of allocution. "I f*eked up," and his epiphany after trial that "money and greed [are not] everything in life," do not provide a sufficient basis on which to disturb the district court's judgment.
 
 
 14
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a), Cir.R. 34(f)