[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 26, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-15687

_____

D. C. Docket No. 04-60204-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN CARLOS SUAREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 26, 2007)**

Before PRYOR and FAY Circuit Judges, and STEELE,[*] District Judge.

PER CURIAM:

---

[*] Honorable William H. Steele, United States District Court for the Southern District of Alabama, sitting by designation.

Juan Carlos Suarez appeals his convictions and sentence for bank fraud, mail fraud, and conspiracy to commit bank and mail fraud. A jury found that Suarez prepared fraudulent appraisals as part of an illegal land-flip scheme. The district court imposed a sentence of 41 months of imprisonment, three years of supervised release, a $700 assessment, and restitution, jointly and severally with the other members of the scheme, in the amount of $1,051,537.20. Suarez argues that the evidence was insufficient to sustain his convictions and that two evidentiary rulings require a new trial. He also argues that his sentence violates the Sixth Amendment, under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), and that the amount of restitution violates the Excessive Fines Clause of the Eighth Amendment. We affirm.

## I. BACKGROUND

The evidence presented at trial established that between June 30, 1998, and August 27, 1999, Suarez participated in a series of illegal land-flip transactions with Doyle Aaron and three others. Aaron used a portion of the loan proceeds from the second half of the flip transactions to pay for the first half of the transactions, and then kept the remainder for himself. When Aaron failed to make loan payments, the loans went into default and his lenders lost approximately $1 million.

The FBI began investigating Aaron in April 2003. It determined that Aaron had orchestrated approximately 26 land-flip transactions and Suarez prepared appraisals for at least 15 of them, including the first one. The appraisals contained inflated values and stated that the middleman was the owner of the property even though the public records did not disclose that individual as the owner. The middleman listed as the owner was often Katja Fort, Aaron's girlfriend.

Suarez prepared many of the fraudulent appraisals while working at Excel Appraisal, Inc. As part of the employment arrangement, Suarez was required to remit a portion of any appraisal fees he collected to Excel. Because Suarez was a trainee-appraiser, any appraisal he completed had to be signed by a certified appraiser. William Rutan, a certified appraiser who worked at Excel, signed seven of the 15 appraisals Suarez prepared for Aaron.

On August 19, 2004, Suarez was indicted in the Southern District of Florida. Count 1 charged that Suarez, Aaron, and a few others conspired to commit bank and mail fraud by submitting false mortgage loan applications, title commitments, and related documents to banks and lending institutions. Counts 2-4 charged bank fraud on the ground that the defendants obtained mortgage loans based on materially false and fraudulent documents. Counts 5-8 charged mail fraud on the ground that the defendants devised a scheme to defraud lending institutions which

3

contemplated the use of the mails. Finally, Count 6 charged Suarez with money laundering. The indictment alleged that Suarez's role in the charged offenses was that, in his capacity as a trainee-appraiser, he overvalued properties and misrepresented the owners of the property.

Before trial, Suarez filed a motion to dismiss the indictment for pre-indictment delay. He argued that appraisers are required to retain their files for only five years. The alleged fraudulent activity occurred in 1998 and 1999, but Suarez was not indicted until 2004. Suarez argued that he had destroyed files that could prove his innocence. The magistrate judge who initially considered the motion stated that Suarez knew he was under investigation in 2001. The district court denied the motion.

At trial, the government introduced evidence that Suarez knowingly prepared the false appraisals. Katja Fort testified that Aaron often argued on the phone with Suarez and told Suarez what values to put in the appraisals. The government also produced faxes that Aaron had sent to Suarez in which Aaron told Suarez what to put into the appraisals. William Rutan testified that Suarez worked from home and would often bring a completed appraisal to him at the end of the work day without the necessary supporting documents and urge Rutan to sign it because the closing was approaching. Suarez would assure Rutan the he had the

4

documents at home. Because Suarez was an experienced appraiser, Rutan did not check the work.

The government also introduced evidence of a past offense committed by Suarez. Marcelino Vega, who owned Excel, testified that Suarez failed to remit to Excel a portion of the fee he obtained from several of the appraisals completed for Aaron. Vega ultimately terminated Suarez for failing to remit these payments, and Excel sued Suarez to recover the money.

At the close of the case-in-chief of the government, Suarez moved for a judgment of acquittal on all counts. He argued that the government had failed to prove he knowingly placed false information in the appraisals. He maintained that Aaron and Fort had made changes to the appraisals he submitted to them. The motion was granted as to the money laundering count but denied as to the rest.

In his defense, Suarez argued that he had not prepared fraudulent appraisals, but instead had prepared accurate appraisals that were subsequently altered by Aaron. He introduced evidence that Aaron had obtained a copy machine and had altered some documents sent to one of the lenders. He argued that the government failed to introduce any evidence showing that he agreed to enter into a fraudulent scheme.

5

During his defense, Suarez sought to introduce a handwritten note that had been found in Aaron's house. The note mentioned the altering of appraisals but did not say to whom it was addressed or by whom it had been written, or whether it was merely a "to do" list. Suarez sought to introduce the note in support of his theory that he prepared accurate appraisals that Aaron then altered. The government objected to the introduction of this note on the ground of relevance, and the court sustained the objection on the ground that the document was hearsay.

At the close of all the evidence Suarez again moved for a judgment of acquittal. Suarez argued that the government had not proved that he received the fax transmissions Aaron attempted to send to him. Suarez also disputed that the signatures on the appraisals were his. The court again denied Suarez's motion. The jury convicted Suarez on all of the remaining counts.

The district court sentenced Suarez to 41 months of imprisonment and imposed restitution, jointly and severally among all of the conspirators, in the full amount of the loss attributable to the conspiracy–$1,051,537.20. The court enhanced Suarez's sentence under guidelines section 2F1.1(b)(1)(L), which requires greater enhancements for higher monetary losses, based on a loss of $526,139.55, the amount attributable to the appraisals prepared by Suarez himself. The district court added a 2-level enhancement for use of a special skill. Suarez

objected that he was only a trainee-appraiser who had to have his work reviewed by a certified appraiser, and the special skill enhancement should not apply. The court overruled the objection and found that serving as a trainee-appraiser required a certain level of experience and professional qualifications.

Suarez filed a post-judgment motion for acquittal or a new trial. He again challenged the sufficiency of the evidence supporting his convictions and argued that the district court erred in excluding the note found in Aaron's house and in allowing the testimony by Vega about his past offense. That motion was denied.

## II. STANDARDS OF REVIEW

This appeal involves several standards of review. Whether sufficient evidence supports a conviction is a question of law we review de novo. United States v. Diaz, 248 F.3d 1065, 1084 (11th Cir. 2001). "[W]e must decide whether based on the evidence presented in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Ellington, 348 F.3d 984, 989 (11th Cir. 2003). The decision of a district court not to dismiss an indictment for pre-indictment delay is reviewed for abuse of discretion. United States v. Foxman, 87 F.2d 1220, 1222 (11th Cir. 1996). The decisions of a district court on questions of admissibility are reviewed for abuse of discretion. United States v. Schlei, 122 F.3d 944, 980 (11th Cir.

7

1997).  The application by the district court of the sentencing guidelines is reviewed <u>de novo,</u> and its factual findings for clear error.  <u>United States v. Delgado,</u> 56 F.3d 1357, 1363 (11th Cir. 1995).  Objections to a sentence raised for the first time on appeal are reviewed for plain error.  <u>United States v. Obasohan</u>, 73 F.3d 309, 310-11 (11th Cir. 1996).

## III. DISCUSSION

Suarez raises six arguments on appeal.  All fail.  We discuss each issue in turn.

### A. There is Sufficient Evidence to Uphold Suarez's Convictions on Conspiracy, Bank Fraud, and Mail Fraud.

Suarez argues the evidence was insufficient to sustain his convictions for conspiracy, bank fraud, and mail fraud.  We disagree.  When we view the evidence in the light most favorable to the government, we conclude that the jury reasonably could have convicted Suarez on all counts.

### 1. Conspiracy to Commit Bank and Mail Fraud

To sustain a conviction for conspiracy under 18 U.S.C. section 371, the government must prove (1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the agreement; and (3) the commission of an act in furtherance of the agreement. <u>United States v. Cure</u>, 804 F.2d 625, 628-30 (11th Cir. 1986).  Suarez argues that

8

the government failed to prove that he knowingly entered into a conspiracy to commit bank and mail fraud. Because the essential nature of a conspiracy is secrecy, the existence of the agreement may be proved based on circumstantial evidence. United States v. Browning, 723 F.3d 1544, 1556 (11th Cir. 1984). The evidence need establish only that the defendant knew the essential objective of the conspiracy; it matters not that he was ignorant of its details or played only a minor role in the overall scheme. United States v. Walker, 720 F.2d 1527, 1528 (11th Cir. 1983). The government need provide evidence only that a defendant conspired to commit a single object of the conspiracy. See Griffin v. United States, 502 U.S. 46, 112 S. Ct. 466 (1991).

There is sufficient circumstantial evidence to sustain the conspiracy conviction. Katja Fort testified that Aaron and Suarez argued about the appraisal values, and the government produced faxes Aaron sent to Suarez instructing him to put certain values in the appraisals. Suarez contends the government never proved he received those faxes, but Suarez does not dispute that he had a one-year business relationship with Aaron. The jury was entitled to find that Aaron knew how to get faxes to Suarez and that Saurez received the faxes. Although Suarez contends that his arguments over the phone with Aaron establish he had not entered into any kind of agreement with Aaron, the jury was entitled to find that

9

these disagreements reflected mutual participation in a larger plan to which the disagreements related. If Aaron had repeatedly, by phone and fax, asked Suarez to participate in an illegal scheme, and Suarez had declined, it is unlikely Suarez would have needed to justify, by argument, his desire not to participate.

## 2. Bank and Mail Fraud

Suarez argues that it was impossible for him to actually commit bank fraud because he was unable to submit an appraisal on his own. He also argues that he could not have intended to commit bank fraud because he knew his work would be reviewed and any efforts to commit fraud would be detected by the reviewer. A defendant can be found guilty of bank fraud if his conduct was designed to deceive a federally chartered or insured financial institution into releasing property with the intent to expose it to actual or potential loss. See United States v. Key, 76 F.3d 350, 353 (11th Cir. 1996).

A reasonable jury could have found that Suarez committed bank fraud. William Rutan testified that Suarez often asked him to sign off on an appraisal at the last minute, without providing the requisite supporting documentation. A jury could find that this was conduct designed to overcome the limitations of Suarez's trainee status, for the purpose of deceiving the banks into approving loans that were disproportionate to the fair market value of the properties in question.

10

Suarez raises no specific challenges to his mail fraud convictions. He seems to argue that, because the evidence does not support his bank fraud convictions, it does not support the attendant mail fraud convictions. We have concluded, however, that the evidence is sufficient to support the bank fraud convictions. Because Suarez raises no further challenges to his mail fraud convictions, we address them no further.

*B. The District Court Did Not Abuse Its Discretion When It*
*Refused to Dismiss the Indictment for Pre-Indictment Delay.*

Suarez argues that the indictment should have been dismissed for pre-indictment delay, because more than five years passed between the preparation of some of the appraisals and the day he was indicted. Suarez argues that, although the statute of limitations is the primary defense against pre-indictment delay, the Due Process Clause also protects a defendant against pre-indictment delay. This argument fails.

The Due Process Clause allows for dismissal of an indictment for pre-indictment delay when the defendant establishes that the delay was (1) the product of a deliberate act by the government to gain a tactical advantage, and (2) caused the defendant actual, substantial prejudice. United States v. Marion, 404 U.S. 307, 324, 92 S. Ct. 455, 466 (1971). Suarez established neither element. There is no

11

allegation that the delay was deliberate, and because Suarez knew he was under investigation in 2001, there was no prejudice to Suarez.

### C. The District Court Did Not Abuse Its Discretion When It Refused to Admit Into Evidence the Handwritten Note Found at Aaron's Residence.

Suarez argues that the handwritten note which the district court refused to enter into evidence on the ground of hearsay should have been admitted under the coconspirator exception to the hearsay rule. See Federal Rule of Evidence 801(d)(2)(E). Suarez cannot invoke this rule. The rule is one of several exceptions that fall under the broader heading, "Admissions of a Party Opponent." The government is the party opponent to Suarez, and the note is not an admission of the government. Nor are we convinced that the note "bore persuasive assurances of trustworthiness" and was admissible hearsay. See Chambers v. Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1972).

### D. The District Court Did Not Abuse Its Discretion When It Admitted Rule 404(b) Evidence Regarding Suarez's Prior Theft Offense.

Suarez argues that the testimony of Marcelino Vega about Suarez's failure to remit to Excel portions of the fees he received from Aaron was impermissible character evidence under Federal Rule of Evidence 404(b) for which he received no notice. This argument fails. Evidence falls outside the ambit of 404(b) when it

12

is: "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." United States v. Baker, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005) (emphasis added). Vega testified that Suarez failed to remit a portion of the fees he received for preparing appraisals for Doyle Aaron. His testimony was about "an uncharged offense which arose out of the same transaction or series of transactions as the charged offense," and was admissible without prior notice to Suarez.

*E. The District Court Did Not Violate Booker When It*
*Enhanced Suarez's Sentence Based on Special Skill.*

Suarez argues that the special skill enhancement violated Booker because the jury never found, and Suarez never admitted, that he possessed a special skill, and that, after Booker, judges may not enhance sentences based on facts not found by a jury or admitted by the defendant. Suarez misunderstands Booker, which held that a judge could not enhance a sentence based on judicially-found facts if the guidelines are mandatory. The district court did not apply the guidelines as mandatory when it sentenced Suarez; the court reviewed the 3553(a) factors before imposing a sentence "at the low end of the advisory guideline range."

13

*F. The Amount of Restitution is Not an Excessive Fine in*
*Violation of the Eighth Amendment.*

Finally, Suarez objects to the amount of restitution imposed by the district court as excessive under the Eighth Amendment. The court imposed restitution on all of the conspirators, jointly and severally, for $1,051,537.20, the entire amount of the loss. When calculating Suarez's sentence, the court found that Suarez was only responsible for approximately half of the loss, and enhanced his sentence under 2F1.1(b)(1)(L) accordingly. Suarez argues that the amount of restitution is grossly disproportionate to the gravity of his offense and violates the Excessive Fines Clause. See United States v. Bajakajian, 524 U.S. 321, 334, 118 S. Ct. 2028 (1998). This argument fails.

When a defendant is convicted of conspiracy, the district court can hold him responsible for the entire amount of the loss attributable to the conspiracy. United States v. Rayborn, 957 F.2d 841, 844 (11th Cir. 1992). A district court can likewise order that restitution be paid in the full amount of the loss of the conspiracy. See United States v. Dickerson, 370 F.3d 1330, 1339 (11th Cir. 2004). When it enhanced Suarez's sentence under guidelines section 2F1.1(b)(1), the district court chose to be lenient and enhance Suarez's sentence based only on the amount of loss attributable to the appraisals he prepared. This act of leniency does not allow us to conclude that the restitution was excessive.

14

## IV. CONCLUSION

Suarez's convictions and sentence are

**AFFIRMED.**